James Harmon Jaubert, Jr., aka James Harmon v. State of Texas










WITHDRAWN
10/31/2000




IN THE
TENTH COURT OF APPEALS
 

No. 10-99-090-CR
No. 10-99-091-CR
No. 10-99-092-CR
No. 10-99-093-CR
No. 10-99-094-CR

     JAMES HARMON JAUBERT, JR.,
     AKA JAMES HARMON,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 372nd District Court
Tarrant County, Texas
Trial Court No. 0548270D
Trial Court No. 0594393A
Trial Court No. 0594394A
Trial Court No. 0594396A
Trial Court No. 0594398A
                                                                                                                
   
OPINION ON REHEARING
                                                                                                                
   
      James Jaubert, Jr., pled guilty to one count of murder and four counts of attempted
murder. He elected to have the jury assess punishment. After the punishment hearing, Jaubert
was sentenced to sixty years for the murder charge, twenty years for one attempted murder
charge, and ten years for each additional attempted murder charge. He appeals, asserting only
that trial counsel was ineffective in failing to request that the State give notice of its intent to
offer evidence of extraneous offenses or bad acts. We will reverse the judgment and order a
new punishment hearing.
BACKGROUND
      On March 15, 2000, we issued an opinion affirming Jaubert’s conviction. His only
assertion on appeal was ineffective assistance of counsel, which we declined to review on the
basis that it had not been preserved in compliance with Rule 33.1. See Tex. R. App. P. 33.1. 
Jaubert filed a petition for discretionary review on April 7. On April 13, the Court of
Criminal Appeals issued Robinson v. State, holding that compliance with Rule 33.1 is not
necessary to bring a claim of ineffective assistance of counsel on appeal. Robinson v. State, 16
S.W.3d 808, 813 (Tex. Crim. App. 2000). Thus, we granted rehearing in this cause on our
own motion so that we could address the merits of Jaubert’s complaint. Tex. R. App. P. 50.
RELEVANT FACTS
      Jaubert and fellow gang-members were involved in three drive-by-shootings in Fort Worth
during April 1994 and July 1995. Bullets killed one young man and wounded four others.
Jaubert pled guilty to five separate indictments and elected to have a jury assess punishment. 
During the punishment stage, Jaubert testified about the shootings and presented character
evidence from several witnesses. Jaubert argues that he was ambushed when the State
repeatedly attempted to elicit evidence of extraneous offenses and bad acts. For example,
during the cross-examination of Louis Pedleton, Jaubert’s uncle, the following exchange took
place:
Q.[By Ms. Box, the State’s attorney]: Okay. You just mentioned that the
Defendant’s father has given you an impression of the Defendant’s behavior
and attitude while he’s been in jail; is that correct?
 
A.Yes, ma’am.
 
Q.And did his father also make you aware of a variety of disciplinary actions
this Defendant has had while he’s been in custody?
 
A. No, ma’am.
 
Q. And did you hear from the Defendant’s father, I guess starting with 1995,
that the Defendant, in fact, got into a fist fight back in February of ‘95?
 
A. I heard that something of that nature, someone had – in jail, you know,
things happen in jail.
 
Q. And did he also make you aware of this Defendant’s involvement in a rape
while he was in jail?
 
A. No, he didn’t.

      This testimony was elicited without an objection by Jaubert’s trial counsel. While
questioning Jaubert’s father, the State’s counsel asked the following questions:
Q.And as far as the rape offense in jail, are you aware that your son actually
was the person who slapped the victim so hard he became unconscious?
 
A. No, I was not.
 
Q. Were you aware that the officer that interviewed the victim in that case
observed bruises on the victim’s face and arms and he had hair falling out of
his head?
 
A. No.
 
Q. Are you aware that the victim also had blood coming from his anus?
 
A.No, I was not.
 
Q. Were you aware that the victim told the nurse that he had been beaten and
raped four times in the last week?
 
A. No.
 
Q.Were you aware that the victim was so afraid of your son that he refused to
prosecute this case?
 
A.I was not aware.

      This testimony was also elicited without an objection by Jaubert’s trial counsel. In her
cross-examination of the Defendant, counsel for the State asked the following questions of the
Defendant, not only about the alleged rape, but other incidents of misconduct:
Q. We’ll get back to that conflict in a minute. What I’m asking you is: Do you
recall back on April 11th of 1994, refusing to obey an order of a female
officer over in the jail?
 
A. No, I don’t.
 
Q. Let me ask you about February 12th of 1995. Do you recall hitting another
inmate as he left the shower with your fist?
 
A. No, I don’t.
 
Q. And of course, let’s talk about the April 11th, 1995 rape of Kevin Manning. 
Is it still your position that you were in a different cell at that time?
 
A. Exactly.
 
Q. Okay. There’s no way that you could have participated in that?
 
A. No way possible.
 
Q. Do you recall telling the victim in that case, Mr. Kevin Manning, that, quote,
unquote, “Come here, Bitch, or I’ll kill you”? Do you recall saying that?
 
A. No, ma’am.
 
Q.Do you recall hitting Mr. Manning to such an extent that he passed out and
was unconscious?
 
A. No, ma’am.
 
Q. So it’s your position that you never raped Mr. Manning; is that right?
 
A. That’s right.
 
Q. Never participated in it?
 
A. I never participated.
 
Q. Are you aware that other inmates observed you while this was going on?
 
A. I never participated.

DISCUSSION
      In his sole issue for review, Jaubert contends that his retained trial counsel failed to render
effective assistance of counsel as required by the Sixth Amendment to the United States
Constitution and by Article 1, Section 10 of the Texas Constitution. In particular, Jaubert
argues his trial counsel did not render effective assistance of counsel during the punishment
phase of the trial because he failed to request that the State give notice of its intent to offer
evidence of extraneous offenses or bad acts. Tex. Code Crim. Proc. Ann. art. 37.07 § 3(g)
(Vernon Supp. 2000).
A.  Extraneous Offenses and Bad Acts 
      Article 37.07, section 3(a) permits the court to admit evidence at punishment of extraneous
offenses or bad acts. Id. § 3(a). Evidence admitted under section 3(a) serves to provide the
jury “with all relevant evidence in order to assess fair and appropriate punishment.” Beasley
v. State, 902 S.W.2d 452, 457 (Tex. Crim. App. 1995); Chimney v. State, 6 S.W.3d 681, 697
(Tex. App.—Waco 1999, no pet.). However, through article 37.07, section 3(g), a defendant
can discover if the State intends to offer this type of evidence. Tex. Code Crim. Proc. Ann.
art. 37.07, § 3(g). “The purpose of article 37.07, section 3(g) is to avoid unfair surprise, that
is, trial by ambush.” Chimney, 6 S.W.3d at 693; Nance v. State, 946 S.W.2d 490, 493 (Tex.
App.—Fort Worth 1997, pet. ref’d). “In other words, the purpose is to allow the defendant
adequate time to prepare for the State’s introduction of the [evidence] at trial.” Chimney, 6
S.W.3d at 694. 
B.  Ineffective Assistance of Counsel
      Texas courts adhere, as we must, to the United States Supreme Court’s two-pronged
Strickland test to determine whether counsel’s representation was so inadequate as to violate a
defendant’s Sixth Amendment right to counsel. Strickland v. Washington, 466 U.S. 668, 687,
104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999). The Court of Criminal Appeals recently held that Strickland applies to the
punishment phase of a noncapital case. Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim.
App. 1999).


 
      Strickland requires a defendant to show that: (1) counsel’s representation fell below an
objective standard of reasonableness, and (2) counsel’s deficient performance prejudiced the
defendant. Roe v. Flores-Ortega, 528 U.S.___, 120 S.Ct. 1029, 1034, 145 L.Ed.2d 985
(2000); Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. The assessment of whether a
defendant received effective assistance of counsel must be made according to the facts of each
case. Thompson, 9 S.W.3d at 813. The appellant bears the burden of proving by a
preponderance of the evidence that counsel was ineffective. Id.
      However, sometimes a single error is so substantial that it alone causes an attorney’s
assistance to fall below the Sixth Amendment standard. Thompson, 9 S.W.3d at 813; Mitchell
v. State, No. 04-96-00643-CR, 2000 WL 867632, at *3 (Tex. App.—San Antonio June 30,
2000, no pet. h.). Courts have frequently found counsel ineffective because of a single error
affecting only the punishment assessed. Ex parte Scott, 581 S.W.2d 181, 182 (Tex. Crim.
App. 1979); Cooper v. State, 769 S.W.2d 301, 305 (Tex. App.—Houston [1st Dist.] 1989,
pet. ref’d); May v. State, 660 S.W.2d 888, 890 (Tex. App.—Austin 1983), aff'd, 722 S.W.2d
699 (Tex. Crim. App. 1984); Burnworth v. State, 698 S.W.2d 686, 690 (Tex. App.—Tyler
1985, pet. ref'd). To ignore a grievous error simply because it is single, while granting relief
where multiple errors cumulatively reach the same magnitude, would be contrary to the
reasons that caused the creation of the doctrine of ineffective assistance of counsel. Valencia
v. State, 966 S.W.2d 188, 191 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d).
C.  Analysis 
      Jaubert argues his trial counsel was ineffective when he failed to request that the State give
notice of its intent to offer evidence of extraneous offenses or bad acts. Tex. Code Crim.
Proc. Ann. art. 37.07, § 3(g). The State claims that Jaubert has failed to overcome the
presumption that his trial counsel’s conduct might be considered sound trial strategy. 
      1.   Objective Standard of Reasonableness 
      When reviewing a claim of ineffective assistance of counsel under the first prong, there
exists a strong presumption that defense counsel's conduct was reasonable and constitutes
sound trial strategy. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. We evaluate the totality
of the representation from counsel's perspective at trial, rather than counsel's isolated acts or
omissions in hindsight. Gutierrez v. State, 8 S.W.3d 739, 749 (Tex. App.—Austin 1999, no
pet.). Appellant has the ultimate burden to overcome this presumption and demonstrate not
only that counsel's performance was unreasonable under the prevailing professional norms, but
that the challenged action was not sound trial strategy. Id.
      The State first argues that trial counsel was effective, because he participated in voir dire,
cross-examined State’s witnesses, presented witnesses for his defense, and filed eight motions. 
However, the Court of Criminal Appeals has held that this level of participation alone is not
sufficient to show that counsel acted reasonably. Ex parte Walker, 794 S.W.2d 36, 37 (Tex.
Crim. App. 1990). In Walker, although counsel gave competent advice about who should have
assessed punishment, he failed to effect his client’s wishes by neglecting to file the motion to
elect prior to trial. Id. at 36-37. The Court held that even though the trial court had made
findings that counsel had filed numerous pre-trial motions, conducted voir dire, cross-examined the State’s witnesses, made numerous objections, made arguments at both phases of
the trial, preserved the defendant’s right to appeal, investigated the facts of the case, and
discussed the law with the defendant, this single error rendered his assistance ineffective. Id. 
at 37.
      The State further claims that, due to the absence of reasons in the record for counsel’s
conduct, Jaubert has failed to overcome the presumption that his trial counsel’s conduct might
be considered sound trial strategy. Here, due to counsel’s failure to request notice, Jaubert and
his character witnesses were ambushed when the State repeatedly attempted to elicit evidence
of extraneous misconduct including the rape of a jail inmate by Jaubert. In addition, counsel
never requested a preliminary determination on the admissibility of the extraneous evidence
and on several instances State’s counsel was permitted to question witnesses without objection. 
As a result of failing to request the notice to which he was entitled, Jaubert’s trial counsel was
not adequately prepared for the State’s introduction of the evidence at trial. See Chimney, 6
S.W.3d at 694. Consequently, Jaubert’s trial counsel’s failure to request notice under Article
37.07, section 3(g) was unreasonable and cannot be justified by any trial strategy within our
imagination. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065; see Valencia, 966 S.W.2d at
191.
      2.   Prejudice
       The second prong of Strickland requires a showing that counsel's errors were so serious
that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. Strickland,
466 U.S. at 687, 104 S.Ct. at 2064; Mallet v. State, 9 S.W.3d 856, 866 (Tex. App.—Fort
Worth 2000, no pet.). A defendant must show there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been different. 
Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is a probability
sufficient to undermine confidence in the outcome. Id. at 669, at 2056.
      We hold that this single error was of a magnitude significant enough to render Jaubert’s
counsel ineffective. Thompson, 9 S.W.3d at 813; Mitchell, 2000 WL 867632, at *3. The
adversarial process broke down at the punishment stage in this case. See Mitchell, 2000 WL
867632, at *4. The record is silent about who fired the fatal shot that killed the young man. 
Jaubert presented testimony from a number of character witnesses. However, their testimony
about his character was overshadowed by evidence of extraneous misconduct, particularly as it
related to the rape incident. Consequently, there is a reasonable probability that but for the
attorney’s error Jaubert’s sentence would have been less. Strickland, 466 U.S. at 694, 104
S.Ct. at 2068; see Valencia, 966 S.W.2d at 190. As a result, counsel's error was so serious
that it deprived Jaubert of a fair punishment hearing. Strickland, 466 U.S. at 687, 104 S.Ct. at
2064.
CONCLUSION
      Under the circumstances, we conclude that Jaubert has overcome the presumption that his
trial counsel’s conduct, during the punishment phase, was trial strategy. Accordingly, we find
that his counsel failed to render effective assistance as required by the Sixth Amendment to the
United States Constitution and by Article 1, Section 10 of the Texas Constitution. Therefore,
because the error occurred during the punishment phase, we reverse the judgment and remand
the cause to the trial court for a new punishment hearing in accordance with Article 44.29(b) of
the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp.
2000); Ex parte Welch, 981 S.W.2d 183, 185-86 (Tex. Crim. App. 1998).
 
                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Davis
      Justice Vance, and
      Justice Gray
Reversed and remanded
Opinion delivered and filed August 31, 2000
Publish



', serif">Opening the Door
       Other courts, including the Second Court of Appeals in Fort Worth, have analyzed the issue
on the well established basis that if a defendant opens-the-door to an otherwise prohibited area of
questioning, he cannot then be heard to object when the State decides to make further inquiry
into the area. Anderson v. State, 896 S.W.2d 578, 579 (Tex. App.—Fort Worth 1995, pet.
ref’d.); McKee v. State, 855 S.W.2d 89, 91-92 (Tex. App.—Houston [14th Dist.] 1993, no pet.). 
The Fourteenth Court of Appeals’ analysis related to another section of Article 37.07 but is
analogous to this case. The Court stated:
Article 37.07 § 4(d) provides that "This section does not permit the introduction of
evidence on the operation of parole and good conduct time laws." Appellant contends
that the State's questions and the elicited answers introduced evidence on the operation
of parole laws. We agree. However, otherwise inadmissible evidence can be introduced
during cross examination if the Appellant has opened the door to that issue. Ortiz v.
State, 834 S.W.2d 343, 346 (Tex. Crim. App. 1992).
 
When a party introduces matters into evidence, he invites the other side to reply. 
Kincaid v. State, 534 S.W.2d 340, 342 (Tex. Crim. App. 1976). On direct examination
by his attorney, Appellant testified that he had twice before been convicted but he had
only spent a total of nine months in jail. We find that the State was properly permitted
to cross examine the Appellant about the sentences he received, and the amount of time
he spent in jail. Appellant clearly opened the door.
McKee, 855 S.W.2d at 91-92.
       The Fort Worth Court, on facts similar to Jaubert’s, has determined that once the appellant
opens the door, the State is not prohibited by Article 37.07 from introducing evidence of
extraneous bad acts. The facts that the Court was dealing with and their holding are as follows:
In his sole point of error, appellant contends that the trial court erred in admitting
evidence of a prior extraneous offense. In reviewing a trial court's decision regarding
the admissibility of evidence of an extraneous matter, an appellate court must measure
the trial court's ruling under an abuse of discretion standard. Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).
During the punishment phase of trial, appellant offered the testimony of a Reverend
R.L. Taylor, who had known appellant nearly all of his life. Based on his personal
knowledge and contact with appellant, Reverend Taylor opined that appellant would be
a good candidate for probation. Reverend Taylor was then confronted with "have you
heard" questions about appellant's prior brushes with the law. In response, Reverend
Taylor stated that he was not concerned about appellant's prior misconduct because he
believed appellant had turned his life around and thus would be a good candidate for
probation "in the future."
 
In rebuttal, Birdie Lundsford testified for the State that on April 6, 1991, when she
was thirteen-years-old, appellant exposed himself and masturbated in front of her and
her two-year-old nephew in a public park. Appellant argues the trial court erred in
admitting Lundsford's testimony on the grounds that it constitutes inadmissable
extraneous offense evidence under Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a).
[footnote omitted] See Grunsfeld v. State, 843 S.W.2d 521 (Tex. Crim. App. 1992). 
We disagree.
 
By offering Reverend Taylor's testimony that appellant was a "good candidate" for
probation, appellant "opened the door" to rebuttal evidence about the specific bad act of
indecent exposure. McMillian v. State, 865 S.W.2d 459, 460 (Tex. Crim. App. 1993);
Grunsfeld, 843 S.W.2d at 526 n. 12; Ortiz v. State, 834 S.W.2d 343, 344-46 (Tex. Crim.
App. 1992); Griffin v. State, 787 S.W.2d 63, 67 (Tex. Crim. App. 1990); Murphy v.
State, 777 S.W.2d 44, 67-68 (Tex. Crim. App. 1988). In other words, by tendering
evidence of his "suitability" for probation, appellant in effect consented to the admission
of specific acts of conduct to inform the jury's discretion in deciding what punishment to
assess. Griffin, 787 S.W.2d at 67. See also Kuczaj v. State, 848 S.W.2d 284, 291 (Tex.
App.—Fort Worth 1993, no pet.).

Anderson, 896 S.W.2d at 579-580.
       Jaubert’s witnesses, in particular James Sr. and Jaubert, testified on direct that he was a
changed person, that the change was real and that he was a good candidate for rehabilitation, a
lenient sentence or a recommendation for community supervision. They also specifically denied
Jaubert’s involvement in the rape. This testimony “opened-the-door” for the State to contradict
the testimony with “specific acts of conduct to inform the jury’s discretion in deciding what
punishment to assess.” Id. We should not use hindsight to second guess trial counsel’s strategy.
Testing Character Witnesses
       The Austin Court has analyzed the issue on similar facts as one of testing the basis of a
character witness’s knowledge on cross-examination. The Court’s analysis is as follows:
Appellant also urges that extraneous offense evidence was improperly adduced
during the punishment phase of trial. Defense witness Larry Jackson testified that he
had known appellant most of his life and that, in his opinion, appellant was a peaceful
and law-abiding person. During cross-examination, the State asked Jackson if he "ever
heard that [appellant] was involved in a stabbing at the Alcoa Inn" and if he "heard
about a complaint against [appellant] made by a--a woman here in Cameron for
aggravated sexual assault." Appellant objected to "these specific instances of conduct
unless the State can show that there's been some kind of conviction." Appellant now
argues that the State was required to prove appellant's guilt of the unadjudicated
offenses beyond a reasonable doubt. Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)
(West Supp.1995).
 
Appellant's contention on appeal does not comport with his trial objection and is
without merit in any event. The State was not attempting to prove appellant's
commission of unadjudicated offenses pursuant to article 37.07, but to test the weight of
Jackson's character testimony. A witness who testifies to the defendant's good character
may be cross-examined regarding relevant specific misconduct by the defendant. 
Reynolds v. State, 848 S.W.2d 785, 788 (Tex. App.—Houston [14th Dist.] 1993, pet.
ref'd); Bratcher v. State, 771 S.W.2d 175, 186-87 (Tex. App.—San Antonio 1989, no
pet.); Lancaster v. State, 754 S.W.2d 493, 495 (Tex. App.—Dallas 1988, pet. ref'd);
Tex. R. Crim. Evid. 405(a). [footnote omitted]. Appellant did not challenge the factual
basis of the State's questions at trial and there is nothing in the record to suggest that the
questions were asked in bad faith. Appellant's trial objection was correctly overruled. 

Drone v. State, 906 S.W.2d 608, 616 (Tex. App.—Austin 1995, pet. ref’d).
Summary
       There are several different analysis that could be applicable to the testimony on cross-examination about which Jaubert complains. Not being part of the State’s case-in-chief, the
Article 37.07 disclosure requirement would have never been triggered, even if the request had
been made by Jaubert’s counsel. Likewise, whether the testimony is analyzed as impeachment
testimony, testing the witness’s knowledge or whether the defendant opened the door to the
admission of otherwise inadmissible testimony, the result is all the same. The evidence would
not have been responsive to an Article 37.07 request. Trial counsel was not ineffective in failing
to object. The testimony was either not objectionable or any objection could have been easily
overcome by the State. See Reynaga v. State, 776 S.W.2d 777, 779 (Tex. App.—Corpus Christi
1989, no pet.). On this record, it cannot be said that trial counsel was ineffective by failing to
make an Article 37.07 request, failing to object to the testimony or in failing to secure a pre-trial
ruling on its admissibility.
Ignoring Higher Court Precedent
       From the record discussed above, there is no per-se evidence of ineffective assistance. The
majority concludes that the Jaubert’s counsel was ineffective because he did not file a request
pursuant to Article 37.07.


 However, to conclude that this was ineffective assistance of counsel,
a mountain of assumptions must be overcome. The majority overcomes them all by simply
changing the presumption the Court of Criminal Appeals has directed that we are bound to
apply–to “strongly presume” that counsel was effective. McFarland v. State, 928 S.W.2d 482,
500 (Tex. Crim. App.1996). Reversing this presumption allows the majority to conclude that
“Jaubert’s trial counsel’s failure to request notice under Article 37.07 § 3(g) was unreasonable
and cannot be justified by any trial strategy within our imagination.” I guess my “imagination” is
a bit more active than my colleagues on the bench.
       Rather than presume effective assistance of counsel, they have presumed ineffective
assistance and searched the record for an explanation to justify why counsel would not have
made the request. Even in this search, they ignore the statements in the record that indicate a
perfectly reasonable explanation for not filing a request for the Article 37.07 disclosure. The
Tarrant County District Attorney has an open file policy. Jaubert’s attorney could have examined
the DA’s file and determined that the jail offense reports were present. In this very efficient
manner, counsel could have learned what information the DA’s office had and could prepare to
respond to it. This could be done without the need for a formal request and a formal response. 
Jaubert loses no statutory rights and does not receive any less effective representation. In fact,
this may work to Jaubert’s benefit by not forcing the State to focus on the other-bad-act evidence
by having to prepare a written response to the defendant’s request.
       Further, there is no prohibition from obtaining this information by way of an oral request.
The majority ignores this possible explanation and thus presumes there was no oral request. Of
course, there is no documentation to prove that an oral request was made. But the statute does
not require a written request before the State can provide the responsive information. By
allowing for the possibility of an oral request and informal response, the lawyers are left to work
out the discovery in the most efficient manner with the least amount of paper wasted. It seems
that we should do everything we can to facilitate this type of cooperation rather than destroy it. 
       As indicated, there is no evidence in the record of an oral request and nothing in the record
that affirmatively shows that the State provided the information in response to an oral request or
simply volunteered the information, knowing that if requested that they would have to produce it. 
This brings me back to the presumptions. The majority has presumed that there was no oral
request and no voluntary cooperation, again presuming ineffectiveness. Whereas, I presume this
could be a perfectly reasonable explanation for the absence of a written request. This becomes
an evidentiary issue that could be resolved at a fact hearing.
       I believe that the Court of Criminal Appeals has clearly articulated the effect of the rules
applicable to evaluating claims of ineffective assistance of counsel. The clear result of the
applicable presumptions is that if any set of facts that is not contrary to the existing record could
exist that would allow the conclusion to be reached that counsel was effective, the judgment must
be affirmed.
       As it has been repeatedly discussed in prior cases, because of the inability to resolve
potential factual disputes or issues, direct appeal of ineffective assistance of counsel claims is
particularly difficult. Without a record to develop the factual underpinnings of a claim, a cold
record is seldom adequate to prove ineffectiveness of counsel. See Gonzalez v. State, 994
S.W.2d 369 (Tex. App.—Waco 1999, no pet.); Foster v. State, 8 S.W.3d 445 (Tex. App.—Waco
1999, no pet.). The defendant is not without relief. The defendants relief is by a post trial writ of
habeas corpus to show that the state of facts which could exist does not in fact exist. 
       Of course there is a much more pragmatic explanation for not making the Article 37.07
request. It is a problem trial lawyers face all the time. “Do I make the request and cause the
opposition to focus on the issue, and possibly cause them to discover previously unknown bad
acts, or do I trust my client to tell me what is out there in the way of other bad acts and simply
prepare to meet it if the State is aware of it and decides to use it?” Even civil practitioners are
faced with this dilemma when requesting discovery of whether their opponent intends to use any
final convictions to impeach any of their witnesses. Tex. R. Evid. 609 (f). This is a variant of
the doctrine-of-negative-surveillance–“Do I ask for something that may work to my benefit but
also has the very real risk of causing me to come under greater scrutiny?”
       Another possible explanation, given the excellent manner in which defense counsel
conducted Jaubert’s case, is that having nothing to counter this evidence with, the defense “put
their best foot forward” and hoped for the best. Jaubert may have been fully aware of the State’s
intended use of the information but had no other evidence to counter it with. Even on appeal,
Jaubert has not claimed that he would have done a single thing differently had he known the
State possessed and intended to use this information. I would say his trial strategy worked pretty
well for Jaubert. His sentence for killing one person and attempting to kill four others was a
maximum time in prison of only 60 years.
Rewriting The Statute
       The part of the statute relevant to this case requires that only if the State intends to use
evidence of a prior bad act in the punishment phase of the trial to enhance sentencing and only if
the defendant makes a timely request, must the State disclose the alleged date and location of the
incident and the name of the victim. Under the guise of ineffective-assistance-of-counsel, the
majority has rewritten the statute to require the State to disclose evidence of extraneous bad acts,
without a request, if under any scenario which may develop at trial the State could seek to
introduce or refer to a prior bad act or extraneous offense for any purpose. 
       If the State fails to make this disclosure the State must forego all use of the evidence or the
defendant is guaranteed a new trial. The majority will entertain no theory or explanation that the
request and disclosure were unnecessary, that there is any theory under which the failure to
request the notice could have been sound trial strategy or that the evidence did not contribute to
the punishment. They have given the criminal defendant much greater rights than did the
legislature.
       This judicial rewrite of the Code of Criminal Procedure causes me the same concerns the
Court of Criminal Appeals expressed when it held that a motion to obtain Article 37.07
information did not trigger the State’s duty to provide the information until the motion was
actually ruled on by the court. Mitchell v. State, 982 S.W.2d 425, 427 (Tex. Crim. App. 1998). 
In Mitchell the Court stated:
To hold otherwise would encourage gamesmanship. The opposite rule could
encourage defendants to bury requests in voluminous motions, hoping the State would
either overlook it or believe ... the request to be contingent on a court order. An ad hoc
approach would encourage gamesmanship on the part of both parties. We do not
ascribe such motives to counsel in the present case, but we recognize the potential for
abuse.
Id. My fear is that the very decision of whether or not to make an Article 37.07 request, versus
the potential to obtain a new trial (at least on punishment) will become part of trial strategy.
Conclusion
       I would not rewrite the statute. I would follow binding Court of Criminal Appeals
precedent. I would follow the applicable statute and evidentiary rules including the interpretation
thereof by our sister courts, in particular the Fort Worth Court of Appeals from which this case
was transferred to us. I would affirm the judgment and hold that on the record before us Jaubert
has failed to meet his burden of showing that trial counsel was ineffective.


                                                                                      TOM GRAY
                                                                                      Justice

Dissenting opinion delivered and filed August 31, 2000
Publish